## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

NATALIE DENISE WEATHERS,
      Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
      Agency.

DOCKET NUMBER
AT-1221-15-0633-W-1

DATE: April 5, 2016

# THIS ORDER IS NONPRECEDENTIAL[1]

Johnny Allen, Columbia, South Carolina, for the appellant.

Edith W. Lewis, Columbia, South Carolina, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review and REMAND the case to the regional office for further adjudication in accordance with this Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2    The appellant filed this appeal as an individual right of action (IRA) appeal on June 18, 2015, alleging that the agency took several personnel actions against her in retaliation for making protected disclosures.  Initial Appeal File (IAF), Tab 1.  Specifically, the appellant asserted below that after she identified and reported to her chain of command that there was mold in her office and that there was a leaking steam pipe "pouring into a trash can in the middle of that office for 3 weeks," she was reassigned from a supervisory position to a program coordinator; her performance appraisal was lowered; and she was harassed on a regular basis until she applied for and took another lower-graded position.  *Id*. at 5.

¶3    The administrative judge found that, on May 15, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC) in which she complained of whistleblower reprisal, and that on June 11, 2015, OSC sent her a letter informing her that OSC was closing the investigation and providing her with the right to seek corrective action from the Board.  IAF, Tab 1.  OSC's letter specified that the appellant had alleged in her complaint that the agency reassigned her, changed her duties and working conditions, lowered her performance rating, and issued her a verbal reprimand because she disclosed that there was mold in the workplace.  *Id*.  The administrative judge issued an acknowledgement order dated July 2, 2015, affording the parties the opportunity to submit evidence and argument concerning the Board's jurisdiction over the appellant's IRA appeal.  IAF, Tab 3.  When the appellant did not respond, the administrative judge issued another order affording the appellant a second chance to address the Board's jurisdiction.  IAF, Tab 6.  Although the appellant submitted a response with supporting documentation, the administrative judge found that the appellant failed to provide a copy of the complaint she filed with OSC or a sworn statement as to

the contents of the complaint.[2]  IAF, Tabs 7-8.  Thus, the administrative judge determined that the only claims the appellant exhausted with OSC are those specifically identified in the June 11, 2015 letter.  IAF, Tab 10, Initial Decision (ID) at 9.  Based on her review of OSC's June 11, 2015 letter, the administrative judge found further that the appellant did not raise and exhaust her claim that the agency took an involuntary reduction in grade[3] against her or that the agency subjected her to a hostile work environment, and thus, the administrative judge found that those personnel actions are not properly before the Board in this IRA appeal.  *Id.*

¶4        Regarding the appellant's alleged disclosure of "mold in the workplace," the administrative judge found that OSC's letter did not provide any details concerning what information the appellant provided to OSC, thus making it impossible to determine whether the appellant provided OSC with the precise ground of her claim.  The administrative judge found further that, while the appellant provided a timeline of some of the events concerning the water leak problem, she failed to follow the instructions in the orders to provide a sworn statement of the information she provided to OSC.  ID at 10.  Because the administrative judge could not determine whether the appellant provided OSC with sufficient information to pursue an investigation, the administrative judge found that the appellant failed to establish that she exhausted her claim before OSC.  *Id.*  Thus, the administrative judge dismissed the appeal for lack of jurisdiction.

---

[2] The agency has not filed a response in this appeal, either below or on review.

[3] The administrative judge noted in the initial decision that the Board may have jurisdiction to review the appellant's claim as a "constructive" reduction in grade under 5 U.S.C. chapter 75, and she advised her that she would need to file a separate appeal to address that claim.  ID at 9 n.3.  However, the administrative judge mistakenly referred to this as a constructive action instead of an involuntary reduction in grade and pay.  Additionally, the appellant was not provided any notice of the Board's jurisdictional requirements for such an appeal.

¶5    On review, the appellant does not challenge the administrative judge's findings regarding jurisdiction over her IRA appeal, and instead she disavows that she was trying to raise a whistleblower claim. Specifically, the appellant asserts the following:

> I want to file a (formal) request to review my initial claim of discrimination and retaliation. Previously, I had erroneously filed my complaint as a Whistle Blowers Retaliation Complain [sic] when it should have been [a] discrimination and retaliation complaint. I was discriminated against based on my disability (Workers Compensation Claim for Work Related Illness), and Constructive Discharge for retaliation for filing unsafe working environment claim [sic].

Petition for Review (PFR) File, Tab 1 at 5. The appellant identifies the alleged incidents that she contends supports her claim of disability discrimination and her claim of a "constructive discharge" due to retaliation and "ongoing harassment" that was "so intolerable" that she was "forced" to take a reduction in grade and pay. *Id*. The appellant includes with her petition for review copies of both her original February 3, 2015 OSC complaint and a modified version of that complaint, which she submitted to OSC on February 23, 2015. The February 23, 2015 OSC complaint includes a document titled "Timeline of Exposure in Unsafe and Unhealthy Work Environment" (Timeline), which is mostly the same timeline of events that she submitted into the record below and to the Office of Workers' Compensation Programs. PFR File, Tab 1 at 8-29; IAF, Tabs 7, 8 at 4-11.

¶6    The Board does not ordinarily consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). However, the Board accepts evidence of exhaustion presented for a first time on review, even if it was available below, when it implicates the Board's jurisdiction and warrants an outcome different from that in the initial decision. *See, e.g.*, *Atkinson v. Department of State*, 107 M.S.P.R. 136, ¶ 12 (2007) (accepting evidence, which the appellant

submitted for the first time on review although he could have submitted it below, that he exhausted his remedies before OSC).  Because the submission of the appellant's OSC complaints go to the heart of the jurisdictional issue, we have considered it on review.

¶7        Here, the administrative judge dismissed this appeal for lack of jurisdiction, finding that the appellant failed to show that she exhausted her claims before OSC because she "failed to follow the requirements of the jurisdictional order by providing a sworn statement with the information provided to OSC."  ID at 10. However, the record reflects that the administrative judge's second order ordered the appellant to:

> [F]ile a statement, accompanied by evidence, listing the following: (1) your protected disclosure(s) or activity(ies); (2) the date(s) you made the disclosures(s) or engaged in the activity(ies); (3) the individual(s) to whom you made any disclosure(s); (4) why your belief in the truth of any disclosure(s) was reasonable; (5) the actions the agency took or failed to take, or threatened to take or fail to take, against you because your disclosure(s) or activity(ies); (6) why you believe a disclosure or activity was a contributing factor to the action(s); and (7) the date of your complaint to OSC and the date that it notified you it was terminating its investigation of your complaint, or if you have not received such notice, evidence that 120 days have passed since you filed your complaint with OSC.  Unless you submit a copy of the complaint you submitted to OSC, along with any amendments you filed there, and a copy of the OSC letter notifying you of your right to appeal to the Board, your response must be in the form of an affidavit, sworn statement, or declaration under penalty of perjury, 28 U.S.C. § 1746 . . . .  The law does not require that you submit a copy of OSC's letter, but it does provide that you bear the burden of establishing the required elements of an IRA appeal.

IAF, Tab 3 at 6-7.  In response to the administrative judge's second order the appellant, who is pro se, submitted a substantial amount of documents related to her alleged reporting of the mold to her chain of command and the subsequent alleged personnel actions taken against her.  IAF, Tabs 7-9.  The appellant included a hand written note on the first page of one submission stating

"Enclosed are supporting documents for pleading sent." IAF, Tab 8 at 1. The appellant's submissions also included her Timeline, dated February 23, 2015, and another copy of OSC's closeout letter. IAF, Tabs 8-9. While the appellant's responses did not include a copy of the complaint she filed with OSC, or a "sworn statement as to the contents of the complaint" filed with OSC, as the administrative judge found, the July 2, 2015 jurisdictional order specifically stated that "[u]nless" she submits a copy of these documents her response must be in the form of an "affidavit, sworn statement, or declaration under penalty of perjury." Here, the record reflects that the Board's e-filing form specifically asked the appellant if she declared, "under penalty of perjury, that the facts stated in this pleading are true and correct," to which she replied, "Yes." *Id.* at 4. Thus, because the appellant answered in the affirmative, and accordingly provided the Board with her declaration "under penalty of perjury" that her pleadings were true and correct, she may have reasonably believed that the declaration in her e-filing was sufficient to meet the requirements in the administrative judge's order, and there is no evidence that the administrative judge attempted to clarify the documentation submitted by the appellant in response to the order.

¶8    We acknowledge that pro se pleadings are to be construed liberally. *See Ney v. Department of Commerce*, 115 M.S.P.R. 204, ¶ 5 n.1 (2010). And, while it is unclear how many, if any, of the appellant's supporting documents that she submitted below also were provided to OSC for its investigation, the record shows that she attempted to comply with the administrative judge's order to provide a statement, accompanied by evidence that showed her alleged disclosures concerning the mold and why she believed her disclosures was a contributing factor in her reassignment. IAF, Tabs 7-9.

¶9    Moreover, the appellant's OSC complaint reflects that on October 30, 2013, she disclosed in writing to the Assistant Chief of Social Work that the "ceiling fell down due to a steam pipe that was broken in my office" and that there was "significant amounts of mold." The appellant asserted that she had

"reported this to leadership after several of the staff and myself came down with respiratory infection." PFR File, Tab 1 at 11. Her OSC complaint stated that she also disclosed to the Assistant Chief that she had requested in writing the "status of the air quality testing" and several times was "told that it was negative for mold." *Id*. at 12. Because the threshold issue in this case is jurisdiction, and because the evidence submitted on review indicates that the appellant has exhausted her complaint before OSC, we have considered her submission and find that, at the very least, she has raised issues of fact regarding her purported disclosures that warrant further development on remand. *See Ingram v. Department of the Army*, 114 M.S.P.R. 43, ¶ 19 (2010); *Drake v. Agency for International Development*, 103 M.S.P.R. 524, ¶ 11 (2006) (explaining that any doubt or ambiguity as to whether the appellant made nonfrivolous allegations should be resolved in favor of affording the appellant a hearing); *see also Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008) (finding that any doubt as to whether the appellant made a nonfrivolous allegation of wrongdoing should be resolved in favor of finding jurisdiction).

¶10     Additionally, in our effort to determine the nature of the personnel actions the appellant exhausted before OSC, we have reviewed the record and find that, while she submitted a copy of the Timeline in her modified OSC complaint and her appeal below, the documents differ because the Timeline in her appeal includes an involuntary downgrade claim, which was not included in either the February 3 or February 23 OSC complaints. Specifically, she asserted in her February 3 OSC complaint that she "was changed from SW Supervisor of MH Emergency Dept. to Traumatic Brain Injury Program Coordinator and that program coordinator was switched to my position without advertising the position." PFR File, Tab 1 at 13. The remedy she requested was "to be removed from the Social Work Service line and placed as the same Step and Grade into another service line." Similarly, the February 23 OSC complaint, which included the appellant's Timeline, stated that the remedy she was seeking was to be

"moved from Social Work Service Line and maintain my GS-12, Step 6," and that she is "now working in a hostile work environment." PFR File, Tab 1 at 26-27. The appellant, moreover, asserted on the continuation page of her appeal that, after identifying mold in her office, she was "reassigned" from a supervisory position to a program coordinator position, her appraisal "was less than previously given," and she was subjected to "harassment on a regular basis until [she] applied and took another position outside of the service line at a lower pay grade." ID at 5. In support, she submitted a Standard Form 50 reflecting a lateral reassignment effective January 26, 2014. IAF, Tab 1 at 7. Thus, the appellant's OSC complaints reflect that she alleged that a personnel action taken against her was a lateral transfer or reassignment to a different position. *See Paul v. Department of Agriculture*, 66 M.S.P.R. 643, 650 (1995) (explaining that a reassignment is a personnel action under the Whistleblower Protection Act).

¶11    However, the version of the Timeline the appellant submitted on appeal states that, following a February 3, 2015 meeting with the Chief of Staff, the Social Worker Chief, and her immediate supervisor, she was interviewed for another position in another service line. PFR File, Tab 1 at 26; IAF, Tab 8 at 11. It states further that "I was offered the position because the ongoing hostility and daily harassment was taking its toll on my health. I accepted the position and announced my resignation as Traumatic Brain Injury Coordinator." *Id*. In addition, the record reflects that she accepted a change to a lower grade on May 18, 2015, with an effective date of May 31, 2015, over 3 months after she filed her complaints with OSC. IAF, Tab 8 at 21-22. Thus, on appeal, the appellant appears to have alleged that she was involuntarily changed to a lower-graded position.

¶12    In sum, although the administrative judge did not distinguish between the appellant's reassignment to a different position and her subsequent reduction in grade, the record reflects that the appellant has exhausted before OSC her claim that the personnel action taken against her was a reassignment to a different

position after disclosing mold in her work space. Accordingly, on remand the administrative judge must consider this claim.

¶13    However, because there is no indication in either of the OSC complaints that the appellant alleged that she was involuntarily reduced in grade and pay, and the only evidence in the record showing a reduction in grade and pay occurred after she filed her complaints with OSC, we agree with the administrative judge that the appellant did not raise or exhaust the additional claim of involuntary reduction in grade and pay with OSC. *See D'Elia v. Department of the Treasury*, 60 M.S.P.R. 226, 231 (1993) (explaining that, in an IRA appeal, the Board may consider only those charges of whistleblowing that the appellant asserted before OSC, and it may not consider any subsequent recharacterization of those charges put forth by the appellant in his appeal to the Board), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224 (1998), *overruled in part on other grounds by Ganski v. Department of the Treasury*, 86 M.S.P.R. 32 (2000). Accordingly, because the appellant did not exhaust this claim before OSC, we are forwarding the involuntary reduction-in-grade claim for docketing as a separate appeal.

¶14    In addition, because the appellant's February 23 OSC complaint alleged that the agency lowered her performance appraisal and that she was working in a hostile work environment, these alleged personnel actions were also exhausted with OSC and need to be addressed on remand. PFR File, Tab 1 at 26-27; *see* 5 U.S.C. ¶ 2302 (a)(2)(A); *see also Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015) (recognizing that the appellant's claim of a hostile work environment is an alleged personnel action). However, to the extent the appellant appears to be raising a disability discrimination claim for the first time on review, the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v.*

*Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).  Because the appellant has made no such showing, we have not considered this argument on review.

## ORDER

¶15      For the reasons discussed above, we vacate the initial decision and remand this case to the regional office for further adjudication in accordance with this Remand Order.  We are forwarding the appellant's involuntary reduction-in-grade claim for docketing as a separate appeal.


FOR THE BOARD:        _____

                                   William D. Spencer
                                   Clerk of the Board

Washington, D.C.